IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

TWO MEN AND A
TRUCK/INTERNATIONAL, INC.,

        Plaintiff,

v.                            CIVIL ACTION NO. 2:14cv248

A MOVER INC. (formerly TWO MEN & A
TRUCK, INC.),

        Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff's Motion for Award of Attorneys' Fees and Costs. Plaintiff's

motion for attorneys' fees is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court grants

in part Plaintiff's motion and awards attorneys' fees and costs in the amount of $24,804.92

($24,310.00 in attorneys' fees and $494.92 in costs). The Court denies in part Plaintiff's motion

for attorneys' fees to the extent such motion requests attorneys' fees or costs beyond $24,804.92.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff owns the registered trademark "TWO MEN AND A TRUCK" as well as several

federal trademark registrations for its "TWO MEN AND A TRUCK" mark, including U.S.

Registration No. 4,340,844. On February 1, 2013, Plaintiff and Defendant's predecessor, Two

Men & A Truck, Inc., a competing moving business, entered into an Asset Purchase Agreement

("APA") whereby Plaintiff purchased the trademark "TWO MEN & A TRUCK" from

Defendant. Pursuant to the APA, Defendant agreed to permanently discontinue use of the

1

designation "TWO MEN & A TRUCK" in any print or Internet advertising, and ensuring there is no residual use of "TWO MEN & A TRUCK" in those publications.

On February 18, 2014, Plaintiff filed a lawsuit against Defendant for trademark infringement, false designation or origin, and unfair competition, and for breach of the APA as a result of Defendant's unauthorized use of the name and mark "TWO MEN & A TRUCK" in connection with the operation of its business.  Plaintiff's complaint alleged that Defendant continued to refer to itself as "TWO MEN & A TRUCK" on various Internet directories and review websites such as Angie's List, SuperPages.com, YP.com, and Yelp. Pl.'s Compl. ¶ 19; ECF No. 1. With respect to Yelp, the complaint specifically alleged that Defendant's continued use of the mark associates Defendant's negative reviews, which include statements that Defendant is "a scam," has "terrible customer service," and shows a "complete lack of professionalism," with Plaintiff, thereby causing harm to Plaintiff's business, reputation, and goodwill. Pl.'s Compl.¶ 24.

On March 31, 2014, Defendant's counsel filed a Notice of Settlement, together with the parties' fully endorsed Final Judgment and Permanent Injunction on Consent. ECF No. 8.  Mr. R. David Moore, listed on the order as Defendant's President and Secretary, signed the order on behalf of Defendant on March 31, 2014.  On April 3, 2014, the Honorable Leonie M. Brinkema entered the Final Judgment and Permanent Injunction on Consent Order ("April 3, 2014 Order") and stated that the Norfolk Division of the Court shall retain jurisdiction over the matter to enforce a violation of the Consent Judgment's terms. ECF No. 9.

On May 15, 2014, Plaintiff filed a Motion to Compel Defendant to Show Cause in response to Defendant's failure to comply with the April 3, 2014 Order.  ECF No. 11.  On

2

September 5, 2014, this Court ordered Defendant to show cause why it should not be held in contempt of this Court's April 3, 2014 Order. ECF No. 17. On October 2, 2014, the show cause hearing was held and Defendant was found in civil contempt. Defendant was assessed a coercive sanction of $350.00 for every day it failed to comply with the Court's April 3, 2014 Order. Defendant was also ordered to pay Plaintiff's attorneys' fees and costs associated with bringing the show cause action. October 14, 2014 Mem. Op. & Order; ECF No. 27. On October 14, 2014, a status hearing was held at which it was determined that Defendant had purged the contempt as of October 6, 2014. Defendant was ordered to pay $1,400.00. On October 16, Defendant submitted its payment to the Clerk of this Court. On October 24, 2014, Plaintiff filed the instant motion and accompanying memorandum for attorneys' fees and costs detailing billing for Mr. J. David Mayberry (partner), Mr. James W. Faris, Jr. (associate), and Ms. Shelia Blackston (paralegal). ECF Nos. 29 & 30. On November 7, 2014, Defendant filed its Memorandum in Opposition. ECF No. 31. Plaintiff did not file a reply.

## II. LEGAL STANDARD

As a general matter, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary*." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The "'reasonableness' of a rate is a concept that does not vary depending on whether the hourly rate (or the fee for that matter) is assessed for compensatory purposes or for punitive purposes." *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 933 F. Supp. 2d, 762, 768 (E.D. Va. 2013). Thus, irrespective of whether it stems from a fee-shifting statute or a sanction, the touchstone of any award of attorneys' fees and expenses is reasonableness. *Id.* at 769 (quoting *E.I. DuPont de Nemours and Co. v. Kolon Indus., Inc.*, Civil Action No. 3:09cv058, 2013 WL 458532, *2 (E.D.

Va. Feb. 6, 2013). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit")

has clearly set forth the method a court should use in determining a reasonable attorneys' fee

award. In *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014), it

explained:

> The proper calculation of an attorney's fee award involves a three-step process. First, the
> court must "determine the lodestar figure by multiplying the number of reasonable hours
> expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235,
> 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the
> rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia
> Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Id.* at 243–44. Next, the
> court must "subtract fees for hours spent on unsuccessful claims unrelated to successful
> ones." *Id.* at 244. Finally, the court should award "some percentage of the remaining
> amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

(Footnote omitted). The *Johnson* factors used to determine the initial lodestar figure include: (1)

The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill

required to properly perform the legal services rendered; (4) the attorney's opportunity costs in

pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations

at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8)

the amount in controversy and the results obtained; (9) the experience, reputation, and ability of

the attorney; (10) the undesirability of the case within the legal community in which the suit

arose; (11) the nature and length of the professional relationship between attorney and client; and

(12) attorneys' fees awards in similar cases. *Id.* at 88 n.5.

The Supreme Court of the United States ("Supreme Court") has stated that there is a

"strong presumption" that the lodestar figure represents a reasonable attorneys' fee, which may

be overcome only "in those rare circumstances in which the lodestar does not adequately take

into account a factor that may properly be considered in determining a reasonable fee." *Perdue

v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010).

The "prevailing market rates in the relevant community" will determine whether the proposed hourly rate is reasonable. *Rum Creek Coal States, Inc.*, 31 F.3d 169, 175 (4th Cir. 1994). This rule applies unless the fee applicant demonstrates that the case at hand was sufficiently complex or specialized such that the required services were not available in the visited market. *SunTrust*, 933 F.Supp.2d at771. Thus, in the majority of cases, the relevant market for determining the prevailing rate is the community in which the court where the action is prosecuted sits. *Rum Creek*, 31 F.3d at 175.

Aside from "the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the 'prevailing market rates in the relevant community' for the type of work for which he seeks an award." *Grissom v. The Mills Corp.*, 549 F.3d 313, 323 (4th Cir. 2008) (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). Affidavits from local attorneys attesting to the reasonableness of hourly rates will meet this requirement. *Robinson v. Equifax Info. Servs, LLC*, 560 F.3d 235, 245 (4th Cir. 2009). "In addition to considering materials submitted by the parties, the court may, on its own, review the billing statement for reasonableness." *Superior Form Builders v. Dan Chase Taxidermy Supply*, 881 F. Supp. 1021, 1026 (E.D. Va. 1994).

Counsel "should exercise 'billing judgment' with respect to hours worked." *Hensley*, 461 U.S. at 437. Plaintiff, as the fee applicant, bears the burden of demonstrating the reasonableness of its fee request, *Kenney v. A Touch of Patience Shared Hous., Inc.*, 779 F. Supp. 2d 516, 525 (E.D. Va. 2011), and of "providing sufficient detail in their records to explain and support their requests for fees and costs." *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 645 (D. Md. 2012). Indeed, "the party who seeks payment must keep records in sufficient detail that a neutral judge

5

can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Hensley*, 461 U.S. at 441 (1983) (Burger, C.J., concurring). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433.

"Proper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks." *EEOC v. Nutri/System Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988). Thus, inadequate documentation, which may take the form of vague task entries or block billing, impedes a court's reasonableness review. *See In re Outsidewall Tire Litig.*, Civil Action No. 1:09cv1217, 2014 WL 4925782, *8 (E.D. Va. Sept. 29, 2014). Blocking billing is "the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task." *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012) (quoting *Guidry v. Clare*, 442 F .Supp. 282, 294 (E.D.Va.2006)). Though not prohibited, *id.*, block billing is disfavored in this district. Courts have reduced fee claims by 10% to 20% in order to address the deficiencies created by lumping. *See In re Outsidewall Tire Litig.*, 2014 WL 4925782 at*9.

The Fourth Circuit reviews a district court's award of attorney's fees for abuse of discretion. *Grissom*, 549 F.3d at 320. Appellate "review of the district court's award is sharply circumscribed; [the Fourth Circuit] . . . recognize[s] that because a district court has close and intimate knowledge of the efforts expended and the value of the services rendered, the fee award must not be overturned unless it is clearly wrong." *Id.*(quoting *Plyer*, 902 F.2d at 277–78).

6

### III. DISCUSSION

#### A. Attorneys' Fees

##### 1. Lodestar Method

The first step in calculating the attorneys' fees is to determine the lodestar by multiplying the reasonable hourly rate by the reasonable number of hours. In sum, Plaintiff submits that the total fees expended are $32,510.50 for 79.7 hours. This represents an average hourly rate of just over $470.00, a composite of the rates charged by each attorney and paralegal: $260.00 per hour for one paralegal, $725.00 per hour for one partner in the law firm, and $425.00 per hour for one associate. In determining the lodestar, the Court will consider the first, second, third, fifth, sixth and ninth *Johnson* factors: "the time and labor expended," "the novelty and difficulty of the questions raised; "the skill required to properly perform the legal services rendered," "the customary fees for like work," "the attorney's expectations at the outset of the litigation," and "the experience, reputation, and ability of the attorney."

Plaintiff ultimately bears the burden of demonstrating that the requested rates are reasonable. Defendant raises two objects related to the reasonableness of the rate. First, the Court should apply the hourly rate in Hampton Roads. Def.'s Br. in Opp. 1. Second, the services of one, not two, attorneys were reasonably necessary for the two hearings. Def.'s Br. in Opp. 2.

##### a. Hourly Rate

In support of its burden to establish the prevailing market rate of attorneys' fees in the relevant community where the district court sits (i.e., the Eastern District of Virginia), Plaintiff initially submitted: (1) the affidavit of its lead counsel and billing records for lead counsel, one junior attorney, and one paralegal; and (2) a copy of a schedule of prevailing hourly rates for

7

intellectual property counsel in metropolitan cities across the country, including the Washington, D.C. area, complied by the American Intellectual Property Law Association ("AIPLA") and found in its 2013 Report of the Economic Survey.

In disputing Plaintiff's request, Defendant's counsel stated that highly qualified counsel was available locally and submitted his own affidavit attesting to the billing rates in the Hampton Roads legal market for large-firm intellectual property attorneys with experience commensurate with Plaintiff's counsel.

In its review of Plaintiff's request, the Court agreed that this case was sufficiently routine such that the required services were available in the local market. Therefore, the AIPLA report was insufficient to carry Plaintiff's burden of proof. Plaintiff had provided no evidence that the report, which pertains to hourly rates of litigation attorneys in major metropolitan cities such as Washington, D.C., is a reliable indicator of the hourly rates of intellectual property litigation attorneys in Norfolk, Virginia, or the larger Hampton Roads community.

Moreover, although Plaintiff detailed the backgrounds and experience of the attorneys and their qualifications in intellectual property law, the affidavit of Plaintiff's lead counsel is insufficient to establish that the rates sought are commensurate with the prevailing market rates of attorneys in the Hampton Roads legal community, of similar skill and for similar experience, handling intellectual property litigation matters before this Court. Similarly, the affidavit of Defendant's lead counsel was unhelpful to the Court. Therefore, the Court directed the Parties to file declarations from detached, neutral counsel with similar qualifications to Plaintiff's counsel attesting to the prevailing rates charged in similar cases in the Hampton Roads area. ECF No. 32. Subsequently, Plaintiff filed a declaration from Mr. Craig L. Mytelka, a partner in the

8

Virginia Beach office of Williams Mullen. ECF No. 34, Ex. 1. Mr. Mytelka stated the following prevailing rates: attorneys with more than 25 years of experience ($500 to $800 an hour); attorneys with five years of experience ($325 to $450 an hour); and paralegals with more than 25 years of experience ($200 to $300 an hour). Defendant filed declarations from Duncan Glover Byers and Brett A. Spain. ECF No. 35, Ex. 1 & 2. Defendant's submissions state rates that are largely inconsistent with one another and therefore, provide little in the way of guidance. However, at least one submission is somewhat consistent with the rates Plaintiff submitted: attorney with 25 years of experience ($550), attorney with five years of experience ($385), and paralegal with "significant experience" ($175 per hour).

After reviewing the Parties' submissions, the Court finds that the following hourly rates are reasonable in this case: $600 for Mr. Mayberry, $400 for Mr. Faris, and $250 for Ms. Blackston.

      **b.**      **Number of Hours Expended**

Defendant argues that the services of one attorney, not two, were reasonably necessary for attendance at the two hearings. "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted." *Johnson*, 488 F.2d at 717. However, the Court does not agree that one attorney would have been sufficient in this case.

First, there is no *per se* rule preventing more than one attorney from participating in court; indeed, in the Court's experience, attendance of more than one attorney is not at all uncommon. Second, Mr. Mayberry served as local counsel in this case. Local Civil Rule

9

83.1(D)(b) states that foreign attorneys "shall be accompanied by a member of the bar of this Court in all appearances before this Court." Local Civ. R. 83.1. Moreover, all pleadings filed with the Court must be signed by local counsel, with whom the Court can, if it chooses, confer with alone "in all matters connected with the case." *Id.* Although the Court has been known to waive the requirement for local counsel's presence, it has done so sparingly and only in cases where it is familiar with foreign counsel through previous appearances before this Court. Given that this was Mr. Faris's first time appearing before this Court, the Court would not have waived the appearance of local counsel, Mr. Mayberry. Thus, he should be compensated for either his time or his travel costs in attending.

Though the "novelty and complexity" of the issues of a case are presumably reflected in the number of billable hours, *Blum v. Stenson*, 465 U.S. 886, 898 (1984), "the trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson*, 488 F.2d at 717. Counsel who file show cause motions stemming from alleged contempt violations are "charged with the knowledge: (a) that a fee award is a possible sanction; (b) that the fee applicant must prove the reasonableness of the time component of a fee application by clear and convincing evidence; (c) that to do so, the applicant must have accurate time records; and (d) that block billing (or lumping) often results in a fee reduction. If a party seeking sanctions disregards that knowledge, it must accept the consequences." *SunTrust*, 933 F. Supp. 2d at 778 (footnote omitted). Determining the reasonable number of hours expended requires separate consideration for each person billing hours. *Superior Form*, 881 F. Supp. at 1025. Taking these principles into consideration, the Court finds that nearly 80 hours for a routine contempt proceeding, which arose from Defendant's failure to

10

comply with a consent order and involved two 10-minute hearings, is excessive. Moreover, the reasonableness of the number of hours (79.7) expended by Plaintiff's counsel is not adequately documented due to excessive use of block billing.

i.    Mr. Faris

Although all members of Plaintiff's legal team[1] listed the entirety of their daily tasks in single compound entries, Mr. Faris's billing presents the greatest challenge to the Court's reasonableness review because he completed the bulk of the work on this case. For example, Mr. Faris's October 2, 2014 entry for 8.0 hours is described as:

> Revise proposed orders in light of Ms. Bazar's declaration; review background materials and previously-filed pleadings and other documents in preparation for show cause hearing; outline arguments and statements for show cause hearing; confer with Mr. Mayberry regarding arguments for show cause hearing; confer with Ms. Blackston about additional edits to proposed orders; confer with accounting about receipt and clearance of additional check from Mr. Moore; participate in show cause hearing; along with Mr. Mayberry meet with Mr. Moore about show cause hearing and steps for him to purge contempt and comply with April Order; review e-mails from Mr. Moore to Yelp support; provide summary report to Ms. Wallace about hearing and discuss next steps; review Court Order finding contempt; return travel.

This is entry insufficient. First, many of these tasks such as discrete conversations that Mr. Faris had with Mr. Mayberry and Ms. Blackston, respectively, as well as the conversation he and Mr. Mayberry had with Mr. Moore, could have easily been detailed separately. Second, the notation "review Court Order finding contempt" is confusing as the Court did not issue its written Order until October 14, 2014. Third, although the decision to compensate an attorney for travel time is within the discretion of the Court, as a general matter, travel time should be billed at a substantially lower than usual rate. *Sun Pub. Co., Inc., v. Mecklenburg News, Inc.*, 594 F. Supp. 1512, 1520 (E.D. Va. 1984). To allow travel time compensation at the same hourly rate as

---

[1] Mr. Mayberry's work is sufficiently documented and requires no analysis by the Court.

11

"in-court or other active time would be unreasonable." *Id.* Indeed, the failure to reduce the hourly rate for travel time indicates a lack of billing judgment. *See Project Vote*, 887 F. Supp. 2d at 716.

In this case, the mere notation of "return travel" does not allow the Court to decipher the amount of time spent traveling in that eight-hour block. This failure to properly itemize and account for travel time appears again in Mr. Faris's entry for October 14, 2014 where "[t]ravel for follow-up contempt hearing" is lumped into a three-hour billing notation for other activities such as:

> [R]eview background materials and as-filed documents in preparation for hearing; prepare outline of arguments/statements for hearing; confer with Mr. Mayberry in preparation for hearing; participate in hearing; review and analyze Order finding A Mover in contempt.

Pl.'s Mem. in Supp., Ex. 4. It would be futile for this Court to attempt to separate these "block entries into their constituent tasks and apportion[] a random amount of time to each." *Abusamhadaneh v. Tyler*, No. 1:11cv939 (JCC/TCB), 2013 WL 193778, *21 (E.D. Va. Jan. 17, 2013). Instead, "the Court will take the lack of specificity and delineation into account, and it will exercise the discretion accorded it by the *Hensley* Court in enacting a reduction from the total billable hours of counsel." *Id.*

In addition, this was a straightforward case about securing the last of three agreed-upon payments and the removal of online material violating Plaintiff's trademark. Also, the show cause hearing was a brief, 10-minute routine proceeding that did not require extensive preparation. Thus, the Court finds that the notation for "[r]eview background materials and case file" which appears in block entries lumped in with other tasks (such as various phone calls) on September 3, 2014 (5.00 hours total), September 25, 2014 (6.50 hours total), September 29, 2014

(2.20 hours total), September 30, 2014 (5.00 hours total), and October 2, 2014 (8.00 hours total),

is duplicative and reflects a lack of billing judgment. Therefore in consideration of this and the

aforementioned deficiencies in Mr. Faris's billing, the Court will reduce Mr. Faris's total billable

hours by 10% or 5.2 hours.

        ii.    Ms. Blackston

As for the billing entries for Ms. Blackston, typical paralegal tasks include "factual

investigation, including locating and interviewing witnesses; assistance with depositions,

interrogatories, and document production; compilation of statistical and financial data; checking

legal citations; and drafting correspondence." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, n.10.

However, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless

of who performs them." *Id.* Indeed, courts in this circuit have determined that because purely

clerical tasks are ordinarily a part of a law office's overhead, (which is covered in the hourly

rate), they should not be compensated for at all. *See Keesee v. Astrue*, No. 2:08cv00029, 2009

WL 1231006, *1 (W.D. Va. Apr. 30, 2009) (citing *Keith v. Volpe*, 644 F. Supp. 1312, 1316

(C.D.Cal.1986)); *Abusamhadaneh*, 2013 WL 193778 at *38. *See also Coates v. Daugherty*, Civ.

A. No. 90-1716-A, 1992 WL 220757, *1 (E.D. Va. June 18, 1992) (denying claim for 1.6 hours

of clerical time); *Alexander S. By and Through Bowers v. Boyd*, 929 F. Supp. 925, 939 (D.S.C.

1995) (reducing fees by 75% for secretarial work performed by project assistants). Examples of

clerical work include: collating and filing documents with the court, issuing summonses,

scanning and mailing documents, reviewing files for information (*Johnson v. Weinstein & Riley*,

P.S., No. 5:99-cv-377-JG, 2011 WL 1261578, *5 n.4 (E.D.N.C. Mar. 30, 2011)); printing

pleadings and preparing sets of orders (*In re Boyds Collection Ltd.*, No. 05-43793DK, 2006 WL

13

4671849, *1 (July 10, 2006)); document organization (*Burr v. Astrue*, Civil Action No.

5:06CV35, 2008 WL 4693543, *6 (N.D. W. Va. Oct. 23, 2008)); creating notebooks or files and

updating attorneys' calendars (*Muhler Co., Inc. v. Window World of N. Charleston LLC*, No.

2:11-cv-00851-DCN, 2014 WL 4269078, *9 (D.S.C. Aug. 28, 2014)); assembling binders

(*Superior Form*, 881 F. Supp. at 1027)); emailing documents or logistical telephone calls with

the clerk's office or the judge's chambers (*Gregory v. Belfor USA Group, Inc.*, No. 2:12CV11,

2014 WL 468923, *6 (E.D. Va. Feb. 4, 2014)).

 This was not a case which required typical paralegal tasks. *See supra* 13. Thus, the Court

finds that several of Ms. Blackston's entries amount to clerical or administrative tasks:

| | |
|---|---|
| 05/15/2014: | Assist with filing Motion to Compel / 0.80 |
| 05/21/2014: | Review pleadings as filed, update correspondence and pleadings files. / 0.90 |
| 05/27/2014: | Verify logistics for PHV application form; confer with Mr. Faris regarding status of filing. / 0.80 |
| 09/04/2014: | Prepare and file Pro Hac Vice application[2] for Mr. Faris; confer with court clerk regarding signature requirements for PHV applications. / 1.20 |
| 09/05/2014: | Prepare updated PHV application for Mr. Faris.[3] / 0.70 |
| 09/09/2014: | File Amended PHV application for Mr. Faris. / 0.60 |
| 10/01/2014: | Review and file Notice of Additional Evidence re Motion to Compel; serve Notice of Additional Evidence to Mr. Moore and A Movers via email and FedEx; download and review updated Docket Report from PACER; download current pleadings from PACER; update pleadings files; update Mr. Mayberry's Pleadings notebook. / 3.10 |
| 10/02/2014: | Confirm delivery of overnight packages to Mr. Moore and A. Mover and forward confirmation of same to Mr. Faris; forward Court Order from Show Cause Hearing to Ms. Wallace; review team correspondence and update correspondence files; document/file management. / 3.30 |
| 10/10/2014: | Download current docket and 10/10/14 filings from PACER and forward same to Mr. Faris; update pleadings file; update Mr. Mayberry's pleadings |

---

[2] A Pro Hac Vice ("PHV") application is a form document that requires no specialized legal training to complete.

[3] The Court also notes that including the preparation and filing of an amended PHV illustrates a lack of billing judgment as it appears the amended form was needed as a result of an error in completing the first form, despite conferring with the clerk's office on the signature requirements prior to submission. Just as the client should not be billed for an error by counsel's team in completing a routine form document, neither should Defendant be charged with that error.

| | binder; review and update team correspondence files. / 3.20 |
| 10/14/2014 | Download and review Order finding A Mover in Contempt and upload same to DeskSite; forward Order to team for distribution. / 0.80 |

Turning to the entry for October 2, 2014, the Court finds that in addition to clerical work, Ms. Blackstone's entry details forwarding a document that this Court had not yet filed. Indeed, as noted above with respect to Mr. Faris's October 2, 2014, entry, the "Court Order from the Show Cause Hearing" was not filed until October 14, 2014. Therefore, it could not have been forwarded to the client on that day. This entry indicates that billing entries were not made contemporaneously and will be reduced accordingly. *See Nutri/System*, 685 F. Supp. at 573 (documentation submitted should reflect "reliable contemporaneous recordation of time spent on legal tasks").

Although the Court notes that the repeated entry of "[r]eview team correspondence and update correspondence files" might be considered vague, it is not clear that such an entry is purely clerical. Accordingly, in its discretion, the Court will not deduct these entries. Where the notation appears lumped with clerical activities, the clerical activities are deducted and 0.50 hours are allocated for reviewing and updating team correspondence files. As a result, the hours for Ms. Blackston's activities are reduced from 20.8 to 5.0 hours.

The remaining Johnson factors which the Court will consider as relevant in this case are (7) "the time limitations imposed by the client or circumstances" and (8) "the amount in controversy and the results obtained." The Court finds that there were no special time limitations in this case, and therefore gives little weight to the seventh *Johnson* factor. To avoid giving double the weight to counsel's success, a key issue that the Fourth Circuit has directed courts to consider after establishing the lodestar, the Court will give little weight to the eighth factor, the

15

amount in controversy and results obtained.  The parties present no information as to the fourth, tenth, eleventh, and twelfth factors, so the Court accordingly gives those factors no weight.

In sum, the relevant factors weigh in favor of the reducing the number of hours to 59.5 from 79.7. Applying the applicable hourly rate to each team member, the Court finds that the lodestar is **$24,310.00**.

### 2. Reduction for unrelated and unsuccessful claims

There were no unsuccessful claims so a reduction on this point is unnecessary. *See McAfee*, 738 F.3d at 88.

### 3. Degree of success

Finally, the Court should consider reducing the fee to account for the degree of success attained by Plaintiff's counsel. Given Plaintiff's success in achieving a finding of contempt, a reduction is not necessary.

Accordingly, Plaintiff's Motion for Attorneys' Fees is **GRANTED-IN-PART** and Defendant is **ORDERED** to pay Plaintiff **$24,310.00** in attorneys' fees.

## B. Costs

Finally, the Court will turn briefly to the $2,005.70 in costs Plaintiff's requested. Because the legal services needed in this case were available in the Norfolk or its surrounding area, the Court will deduct travel expenses related to Mr. Faris's travel from Atlanta. The Court is also concerned that more than two-thirds of the costs requested stem from Mr. Faris's travel which amounted to $1,510.78. This is unreasonable. This was a ten-minute hearing which Mr. Mayberry was fully capable of handling alone without incurring airfare, hotel expenses, and car rental fees for an associate to travel from Atlanta. Indeed, Mr. Faris's billing entry on September

16

25, 2014, contains the notation "confer with Mr. Mayberry about . . . possibility of engaging local counsel." Given that this conversation occurred prior to incurring fees for his travel, it appears to the Court that Plaintiff's counsel weighed the matter. In its discretion, however, the Court declines to deduct travel expenses for Mr. Mayberry as he served as local counsel admitted to practice before the Court. Therefore, Plaintiff's Motion for Costs is **GRANTED-IN-PART** and **DENIED-IN-PART** and Defendant is **ORDERED** to pay Plaintiff **$494.92** in costs.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Award of Attorneys' Fees and Costs is **GRANTED-IN-PART** and **DENIED-IN-PART**. Defendant is **ORDERED** to pay Plaintiff $24,310.00 in attorneys' fees and $494.92 in costs.

The Court **DIRECTS** the Clerk to send a copy of this Order to all parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
April 7, 2015

Raymond A. Jackson
United States District Judge

17